IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LOUIS GONZALES, <br> Institutional ID No. 2299668, <br> <br> Plaintiff, <br> <br> v. <br> <br> LUBBOCK COUNTY <br> DETENTION CENTER, *et al.*, <br> <br> Defendants. | § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. 5:19-CV-272-BQ <br> § <br> § <br> § <br> § <br> § <br> § |

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION AND ORDER OF TRANSFER**

This case was transferred to the magistrate judge by order dated January 8, 2020. ECF No. 8. In accordance with said order, the undersigned conducted preliminary screening as described in 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and determined that pro se Plaintiff Louis Gonzales's claim for deliberate indifference to medical care based on a delay in treatment while detained at the Lubbock County Detention Center (LCDC) survives preliminary screening. ECF Nos. 20, 23. Consequently, the Court entered an order requiring Defendants to answer or otherwise plead to Gonzales's claim. *See* ECF Nos. 20, 23.[1] Defendants Jeri Bolton, Kevin Cole, Linda Martinez, Lu-anne Peaslee,[2] Patricia Quinn, and Kevin Waddington filed their Answer on September 11, 2020. ECF No. 32. As of today's date, all parties have not consented to jurisdiction by the magistrate judge. Upon review of Defendants' Answer, it is the opinion of the undersigned that this matter must be transferred to the district judge for further proceedings.

---

[1] The Court completed substantive screening of this case on July 14, 2020. *See* ECF Nos. 20, 21. Because Gonzales named several Doe Defendants requiring identification, however, return of the case to the District Judge was delayed.

[2] Based on information from Lubbock County, the Court directed "Lu-anne Peasley" to answer or otherwise plead. ECF No. 23; *see* ECF No. 22. It appears, however, that Defendant's surname is spelled "Peaslee." ECF No. 32. The undersigned therefore refers to Defendant by that name.

1

I. **Discussion**

The undersigned previously found that Gonzales's claim for deliberate indifference to serious medical needs based on a delay in treatment survives preliminary screening.[3] *See* Order Directing Service by the United States Marshal and for Defendant to Answer 2–7, ECF No. 23 [hereinafter Order to Answer].

Gonzales's claim for a delay in medical treatment arises under the Fourteenth Amendment.[4] An inmate seeking to establish a Fourteenth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotations omitted)), and requires satisfaction of both an objective and a subjective component. *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and

---

[3] The Court concluded that Gonzales's allegations against Lubbock County, LCDC, Lubbock County Sheriff's Department, Lubbock Police Department, Mike Callam, and Dr. Mackay failed to state claims for relief and/or were frivolous and dismissed them. *See* ECF Nos. 20, 21. The Court also dismissed Gonzales's claims for retaliation, conspiracy, and deliberate indifference to serious medical needs based on the alleged denial of a bunk restriction, against all Defendants for the same reasons. *See* ECF Nos. 20, 21.

[4] It appears Gonzales was a pretrial detainee at the time of the incident giving rise to his claim. As such, his rights derive from the Fourteenth Amendment, not the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (stating that pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Because the standard for deliberate indifference to serious medical needs is essentially the same for both pretrial detainees and post-conviction prisoners, however, cases applying the Eighth Amendment are still relevant to the Court's analysis.

(2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

"To establish liability based on a delay in medical treatment, a plaintiff must show deliberate indifference to serious medical needs that resulted in substantial harm." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017). "The pain suffered during a delay in treatment can constitute a substantial harm and form the basis for an award of damages." *Id.*

Gonzales contends that on August 12, 2019, he injured his wrists during a fall. Compl. 6, ECF No. 1; Questionnaire 1, ECF No. 17. Gonzales claims that he completed a sick call request (SCR) the same day, seeking medical treatment.[5] Compl. 6; Questionnaire 1. According to Gonzales, the next day, i.e., August 13, medical staff examined him, diagnosed him as suffering a musculoskeletal strain to his wrists, and prescribed ibuprofen for ten days to relieve any pain. Compl. 6; Questionnaire 2. Gonzales asserts he continued to experience pain in his right wrist. Compl. 6; Questionnaire 2. Thus, ten days after the initial examination Gonzales alleges he completed a second SCR, and on September 12, 2019, LCDC medical staff took x-rays of his right wrist. Questionnaire 2. Gonzales avers that two weeks later, staff informed him that he had a broken right wrist. *Id.*

Gonzales contends that after the x-rays revealed he had a broken right wrist, LCDC staff, including Jeri Bolton, Kevin Cole, Linda Martinez, Lu-anne Peaslee, Patricia Quinn, and Kevin

---

[5] Gonzales's allegations and the authenticated records conflict as to the date of the injury and his initial request for treatment. Gonzales claims that he injured his wrists and requested treatment on August 12, but the records reflect that he first submitted a SCR on August 19, 2019. This discrepancy has no impact on the Court's analysis or recommendation.

Waddington failed to provide adequate medical treatment.[6] *See* Questionnaire 5; Questionnaire II 3. Specifically, Gonzales claims that medical staff "did not take any extra actions to ensure the immobility of the wrist . . . ([such] as a splint or wrap)." Questionnaire 6. Gonzales alleges that it was not until December 10, 2019, almost four months removed from the original claimed injury, that Nurse Practitioner Erica Carter and Dr. Mackay with the Texas Tech Health Sciences Center Orthopaedic Clinic examined his right wrist and prescribed a cast to heal the fracture. *Id.* at 2. In regard to the alleged delay in treatment of his wrist (i.e., the failure to provide any treatment for his wrist between September and December 2019), Gonzales contends that he "endure[d] physical pain" and "mental and emotional anguish." Questionnaire II 3.

The authenticated records reflect that on August 19, 2019, Gonzales completed a SCR reporting that his wrists were injured and swollen. The following day, August 20, a paramedic examined Gonzales and diagnosed him as having a musculoskeletal strain and prescribed ibuprofen to relieve the pain. On September 7, 2019, the records show that Gonzales completed a second SCR complaining of right wrist pain; he reported that he was "unable to use or put pressure [on his wrist] due to pain." The same day, medical staff examined Gonzales and ordered x-rays of his right wrist. The x-rays revealed that Gonzales was suffering from a "[r]ecent onset avulsion fracture involving the scaphoid bone . . ." in his right wrist. On September 16, 2019, staff renewed Gonzales's prescription for ibuprofen for ninety days and faxed a request for an appointment.[7]

---

[6] In his questionnaire responses, Gonzales attributed the purported delay in treatment to (1) a "caucassain [sic] male . . . in his late 50's, 150 lbs, short/almost bald" with whom he had contact in September 2019, "two weeks after the X-rays were taken in the LCDC Facility"; (2) "[a] caucassain [sic] [f]emale . . . early 40's, 170 lbs" with whom he had contact in August 2019 during his "initial visit" after reporting his wrist injury; and (3) "medical personel [sic] whom [sic] had direct contact to [his] medical file(s)" between September and December 2019. Questionnaire 5; Questionnaire II 3, ECF No. 19. The Court directed Lubbock County to identify these individuals and, on August 6, 2020, Lubbock County responded. ECF No. 22. The Court subsequently entered the Order to Answer, requiring the individuals identified by Lubbock County to answer or otherwise plead.

[7] The records do not specify to whom LCDC staff faxed the request or the nature of the appointment. Later notes indicate, however, that Gonzales ultimately received treatment from the Texas Tech University Health Sciences Center Orthopaedic Clinic.

The notes reflect that on September 26, October 11, October 18, October 23, November 5, and November 13, 2019, LCDC staff made follow-up inquiries to the clinic to determine the status of the appointment request. On November 19, 2019, staff secured an appointment for Gonzales, and on December 10, 2019, Nurse Practitioner Erica Carter and Dr. Mackay examined Gonzales.

Gonzales reported to Nurse Practitioner Carter that his wrist was painful and that it had never been immobilized, although he did report wearing an ace bandage. Nurse Practitioner Carter noted that the "fracture [was] nonunited after 3 months with no evidence of healing" and that an x-ray taken the day of the exam revealed a "minimally displaced fracture in acceptable alignment for nonoperative management." Dr. Mackay and Nurse Practitioner Carter prescribed, and Gonzales was placed in, a "SAC thumb spica IP free [cast] . . . by cast technician and cast care instructions [were] given."

Accepting Gonzales's allegations as true, as the Court must at this stage of the proceedings, and having reviewed the authenticated records, Gonzales's factual assertions state a claim sufficient to survive preliminary screening, i.e., a claim for a delay in treatment, against Defendants Jeri Bolton, Kevin Cole, Linda Martinez, Lu-anne Peaslee, Patricia Quinn, and Kevin Waddington. *See, e.g.*, *Alderson*, 848 F.3d at 422–23 (concluding detainee's claim that defendant delayed medical treatment for over one week by refusing to provide detainee with antibiotics and painkillers, resulting in a "tremendous amount of pain" and the risk of "a greater likelihood of infection," stated claim sufficient to survive screening); *Bailey v. E.B.R. Par. Prison*, Civil Action No. 12–224–JJB, 2015 WL 545706, at *4 (M.D. La. Feb. 9, 2015) (adopting magistrate judge's recommendation that detainee's deliberate indifference claim based on a delay in treatment survived screening, where "[a]lthough the defendant apparently saw the plaintiff on multiple occasions and prescribed medication for the plaintiff's complaints, this medication reportedly did

not work or had adverse consequences, and the plaintiff allegedly experienced pain and discomfort for a substantial period of time"—i.e., more than one year); *Riley v. Nueces Cty. Jail*, C.A. No. C-08-159, 2008 WL 2571786, at *4 (S.D. Tex. June 9, 2008) (finding prisoner's allegation that defendants knew he was suffering from high blood pressure and required medication, but failed to "prescribe[] the medication for almost three months" stated claim sufficient to survive screening), *R. & R. adopted by* 2008 WL 2571778 (S.D. Tex. June 26, 2008).

Given the timeframe set forth by the district judge in the referral order, it appears prudent to transfer the case back to the district judge for implementation of a scheduling order. Accordingly, it is the **RECOMMENDATION** of the magistrate judge that a scheduling order should be entered, setting dates certain for pretrial deadlines and filing dispositive motions.

It is therefore **ORDERED** that the transfer of this case to the United States Magistrate Judge is terminated and the case is hereby transferred back to the docket of the United States District Judge. This case shall hereinafter be designated as Civil Action Number 5:19-CV-272-H.

## II.   Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual

findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 17, 2020

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE